UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


S.P. RICHARDS COMPANY,
a Georgia Corporation

    Plaintiff,

v.

                                      CASE NO. 8:11-cv-1204-EAK-TGW

HYDE PARK PAPER COMPANY, INC.,
a Florida corporation and PAUL
ALAN HOFFMAN, jointly and severally

    Defendant,

and

FREEDMAN OFFICE SUPPLY LLC,
a Florida limited liability company

    Supplemental Defendant.
_____/

### ORDER ON SUPPLEMENTAL DEFENDANT'S MOTION TO STRIKE AND MOTION FOR SUMMARY JUDGMENT

### PROCEDURAL HISTORY

Plaintiff, S.P. Richards Company, filed a complaint against Defendants Hyde Park Paper Company, Inc. ("Hyde Park") and Paul Hoffman ("Mr. Hoffman") on May 31, 2011 for breach of contract. (Doc. 1). Hyde Park and Mr. Hoffman did not defend against the suit. (Doc. 12). On August 5, 2011, Plaintiff was awarded a default final judgment of $174,508.28. (Doc. 16).

After the default final judgment was entered, Plaintiff started judgment enforcement activities, obtaining a writ of execution against Hyde Park. (Doc. 21). Plaintiff also acquired a writ to garnish Mr. Hoffman's wages. (Doc. 22). Plaintiff later agreed to dissolve the writ due to Mr. Hoffman's head of household exemption from wage garnishment. (Docs. 24, 27).

Plaintiff amended its complaint, stating a claim against Supplemental Defendant, Freedman Office Supply LLC ("Freedman Office"), under the Uniform Fraudulent Transfers Act ("UFTA"). (Doc. 46). Plaintiff asserts that around January 21, 2011, Hyde Park and Mr. Hoffman transferred property to Freedman Office and that the transfer was made with actual intent to hinder, delay, or defraud and that Hyde Park did not receive reasonably equivalent value for the property received. (Doc. 46, ¶ 6, 7).

## I. MOTION TO STRIKE

Supplemental Defendant filed a motion to strike the affidavit of Ray Caissie and ¶ 8, 9, and 11 of Phillip Welch's affidavit. (Doc. 62). Both parties stipulated and agreed to Plaintiff's withdrawal of the Caissie's affidavit. (Doc. 63). Plaintiff filed a response to Supplemental Defendant's motion for summary judgment. (Doc. 64). For the reasons set forth below, Supplemental Defendant's motion to strike will be **DENIED**.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that "the court may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." Hutchings v. Fed. Ins. Co., 2008 WL 4186994 at *2 (M.D. Fla. Sept. 8, 2008). It is not intended to "procure the dismissal of all or part of a complaint." Id. Likewise, a motion to strike is a drastic remedy and is disfavored by the courts. Rehyer v. Trans World Airlines, 881 F. Supp. 574, 576 (M.D. Fla. 1995). Therefore, a motion to strike should be granted only if "the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." Id.

**DISCUSSION**

As noted above, the parties have agreed on the withdrawal of Ray Caissie's affidavit. Therefore, only ¶ 8, 9, and 11 of Phillip Welch's affidavit are at issue here. Freedman Office does not argue that Welch's affidavit contains any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Instead, Freedman argues that Mr. Welch lacks the personal knowledge to make the statements made in the three paragraphs at issue and that Mr. Welch assumes certain facts (Doc. 62, p. 4). It is conceded that Mr. Welch is not an expert witness but a lay witness pursuant to Fed. R. Evid. 701. (Doc. 62, p. 3–4; Doc. 64, p. 4). Mr. Welch makes clear in his affidavit that his statements are made based on his personal knowledge or his review of Plaintiff's business records. (Phillip Welch Aff. ¶ 1).

In ¶ 8 of Mr. Welch's affidavit, he testifies that defendant ("Hyde Park") was a stockless dealer. (Welch Aff. ¶ 8). From his personal knowledge on the subject, Mr. Welch goes on to describe what a stockless dealer is. (Welch Aff. ¶ 8). During his deposition, Mr. Hoffman, the owner and operator of Hyde Park, described Hyde Park as a "non-stocking supplier." (Transcr. Depo. Hoffman 25:20) [Supp. Ex. iv]. Essentially, Mr. Hoffman and Mr. Welch are referring to the same business model. Therefore, Mr. Welch is accurate when he describes Hyde Park as a stockless dealer. Mr. Welch has worked for Plaintiff since 1985 and has held several different finance-related positions. (Welch Aff. ¶ 2). He is also a Certified Public Accountant. (Welch Aff. ¶ 2). Due to Mr. Welch's experience and his examination of Plaintiff's business records, there is no doubt that his statements were logically made from his personal knowledge after reviewing Plaintiff's business records. (Welch Aff. ¶ 1–2).

¶ 9 of Mr. Welch's affidavit he discusses Freedman's status as a stockless supplier. (Welch Aff. ¶ 9). Mr. Welch again uses his personal knowledge and business records kept by the Plaintiff to come to this conclusion. He goes on to describe first and second-call suppliers, stating that a stockless supplier that had an order to fill would make their first call to its first-call supplier and if that supplier was unable to fill the order, the stockless supplier would call the second-call supplier. (Welch Aff. ¶ 9). He concludes ¶ 9 by stating that there are two national wholesalers of office products: Plaintiff (S.P. Richards) and United Stationers. (Welch Aff. ¶ 9). He then "assumes" that because S.P. Richards and Freedman had a second-call relationship, Freedman's first-call relationship was with United Stationers. (Welch Aff. ¶ 9). As Plaintiff has pointed out, this is more of an inference than an actual assumption. If there are only two options and one of them is known to have a second-call relationship, the one remaining option must have a first call relationship. Given Mr. Welch's experience working for one of two national wholesalers, his knowledge regarding first and second-call relationships is substantial.

In ¶ 11 of Mr. Welch's affidavit, he states that after reviewing Plaintiff's business records there is no advance notice by Hyde Park that it intended to close during January 2011 reflected *in those records*. (Welch Aff. ¶ 11). A review of Plaintiff's business records is necessary in order to determine whether those records contained any advanced notice of Hyde Park's intent to close. Therefore, not only is Mr. Welch's review of the business records sufficient to set forth ¶ 11, it is entirely necessary.

Mr. Welch makes it clear that his affidavit is based on his personal knowledge and his review of Plaintiff's business records. Further, nothing in the affidavit is "redundant, immaterial, impertinent, or scandalous. . ." Fed. R. Civ. P. 12(f). Therefore, Freedman fails to meet the burden required to permit a motion to strike. As is the case here, motions to strike rarely meet

the burden required as "[they] are generally disfavored by the Court and are often considered time wasters." Hutchings, 2008 WL at *2.

## II. MOTION FOR SUMMARY JUDGMENT

On May 29, 2015, Freedman Office filed a motion for summary judgment. (Doc. 53). Plaintiff filed its response in opposition to summary judgment on June 12, 2015. (Doc. 57). For the reasons set forth below, Supplemental Defendant's motion for summary judgment will be **DENIED**.

### UNDISPUTED FACTS

Freedman Office and Hyde Park were competitors in the office product sales business, each being based in Tampa, Florida. (Freedman Aff. ¶ 4, 5; Hoffman Aff. ¶ 4, 6). Freedman Office is owned and operated by Steve Freedman ("Mr. Freedman"). (Freedman Aff. ¶ 2). Hyde Park was owned and operated by Paul Hoffman ("Mr. Hoffman") and Kelly Hoffman ("Mrs. Hoffman"). (Hoffman Aff., ¶ 2). S.P. Richards distributes office products to retailers—in fact, both Freedman Office and Hyde Park purchased office products from S.P. Richards. (Hoffman Aff. ¶ 4; Freedman Aff. ¶ 4).

Mr. Hoffman and Mr. Freedman negotiated Mr. Hoffman's future employment at Freedman Office. (Freedman Aff. ¶ 8; Hoffman Aff. ¶ 9). On about January 21, 2011, Freedman Office and Mr. Hoffman reached an employment agreement. (Hoffman Aff. ¶ 14). Mr. Hoffman received a $60,000 signing bonus in addition to monthly compensation as a sales agent. (Hoffman Aff. ¶ 14). In addition to the employment agreement, Hyde Park and Mr. Hoffman agreed on the transfer of Hyde Park's customer list and trade name to Freedman Office. (Hoffman Aff. ¶ 16). Mr. Hoffman and Freedman Office also agreed to a "side letter" which modified the employment agreement, entitling Mr. Hoffman to a $120,000 override commission

if he were terminated by Freedman Office, without cause, within the first six months of employment. (Freedman Aff. ¶ 14, Ex. 2; Hoffman Aff. ¶ 15)

When the employment agreement was executed, Hyde Park owed S.P. Richards a debt for office products previously purchased—a debt that was guaranteed by Mr. Hoffman. (Freedman Aff. ¶ 17; Hoffman Aff. ¶ 18). After the employment agreement, side letter, and transfer of Hyde Park's property were completed, Mr. Hoffman stopped operating Hyde Park and started his work with Freedman Office. (Freedman Aff., ¶ 16; Hoffman Aff., ¶ 17).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for its motion for summary judgment and "identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party meets its burden if it demonstrates "an absence of evidence to support the nonmoving party's case." Id. at 325. The burden then shifts to the nonmoving party to identify specific facts that demonstrate a genuine issue of material fact in order to avoid summary judgment. Id. at 324.

An issue of fact is "genuine" only if a reasonable jury, after considering the evidence presented, could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). A factual issue is "material" if it might affect the outcome of the trial under the governing substantive law. Id. at 248; Hickson Corp. v. Northern Crossarm Co., 357 F.3d 1256, 1259–60 (11th Cir. 2004). When ruling on a motion for summary judgment, the Court must view

all inferences to be taken from the facts in the light most favorable to the nonmoving party. U.S. v. Diebold, 369 U.S. 654, 655 (1962). The weighing of evidence, the determination of credibility, and the drawing of reasonable inferences from the facts are all functions of the jury, not the judge. Anderson, 477 U.S. at 255. Therefore, if determination of the case rests on deciding which competing version of the facts and events is true, then summary judgment is inappropriate and the case should be submitted to the jury. Rollins v. TechSouth, Inc., 833 F.2d 1525, 1531 (11th Cir. 1987).

## DISCUSSION

Both parties agree that Mr. Hoffman is not an asset of Hyde Park under the UFTA. Fla. Stat. Ann. § 726.102(2) (West). Plaintiff argues that the customer list is a corporate asset that was transferred from Hyde Park to Freedman Office. Supplemental Defendant asserts that the customer list belongs to Mr. Hoffman and not Hyde Park. The customer list is an asset of Hyde Park under the UFTA. Bankruptcy courts have held that customer lists/customer goodwills are business assets. Matter of Prince, 85 F.3d 314, 323 (7th Cir. 1996)(holding that a dentist's goodwill is "not intrinsically part of his human capital, but rather is a separate intangible capital asset of the practice").

Pertinent to this case, the UFTA states that a transfer is fraudulent if the debtor made the transfer (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor engaged in a transaction for which the remaining assets of the debtor were unreasonably small. Fla. Stat. Ann. § 726.105(1) (West).

**ACTUAL INTENT**

When determining actual intent to defraud a creditor, the court considers how many statutory "badges of fraud" are present. Fla. Stat. Ann. § 726.105(2)(a-k) (West); Wiand v. Lee, 753 F.3d 1194, 1200 (11th Cir. 2014). Multiple badges of fraud will give rise to a prima facie case and a rebuttable presumption that the transaction is void. Id.; Gen. Elec. Co. v. Chuly Int'l, LLC, 118 So.3d 325, 327 (Fla. Dist. Ct. App. 2013). Multiple badges of fraud could be present here.

First, Hyde Park was insolvent at the time of the transfer pursuant to the definition of insolvency under the UFTA because Hyde Park's debts were greater than its assets at the time of the transfer. Fla. Stat. Ann. § 726.103(1) (West). In fact, Hyde Park's asset deficit was $71,835. (Doc. 61, 2010 Tax Return). Therefore, this badge of fraud is satisfied.

Second, it is possible that Hyde Park received an unreasonably small sum for what it transferred to Freedman Office. Freedman Office argues that $5,000 is reasonable value for the customer list and trade name. However, as Plaintiff points out, Hyde Park's 2011 tax return does not reflect the $5,000 payment. (Doc. 61). Therefore, it is possible that Hyde Park (and Mr. Hoffman) received nothing for the client list and trade name it transferred to Freedman Office. If Freedman Office argues $5,000 is a reasonable amount to pay for the client list and trade name, no payment must be unreasonably small. Further, Mr. Freedman highlighted the customer list's worth when he stated that "the value. . .is the customer list." (Doc. 60, Transcr. Depo. Freedman 33:19). Therefore, this second badge could be found to be present. The badges discussed here are not exhaustive, as more badges could be proven to be present. Multiple badges of fraud may exist here, so actual intent to defraud could be found. Wiand, 753 F.3d at 1200; Gen. Elec. Co., 118 So.3d at 327.

**REASONABLY EQUIVALENT VALUE**

Freedman Office asserts that it paid reasonably equivalent value—$5,000—for Hyde Park's customer list and trade name. Plaintiff argues that there is evidence to show that Freedman Office did not pay Mr. Hoffman anything for the customer list or trade name. As mentioned above, Hyde Park's 2011 tax return does not reflect the receipt of the payment for Hyde Park's customer list and trade name. Whether there was payment at all for the trade name and customer list is a material fact that is in dispute. It is unclear whether or not reasonably equivalent value was paid for the assets transferred. Therefore, it is a fact for the jury to decide.

**AFFIRMATIVE DEFENSE**

The UFTA states "A transfer or obligation is not voidable under s. 726.105(1)(a) against a person who took in good faith and for a reasonably equivalent value. . ." Fla. Stat. Ann. 726.109(1) (West). The "reasonably equivalent value" prong of the affirmative defense has already been addressed above in the section of the same name—there is evidence suggesting nothing was paid in exchange for the client list and trade name and, therefore, there is a dispute as to whether reasonably equivalent value was paid. Therefore, the only prong left to consider is the question of "good faith."

Because good faith is part of an affirmative defense, Freedman Office has the burden of demonstrating it acted in good faith. Wiand v. Waxenberg, 611 F. Supp. 2d 1299, 1319 (M.D. Fla. 2009). Freedman Office concedes that "good faith" is typically a fact-intensive inquiry that is normally not determined upon summary judgment. Freedman Office claims it had no actual knowledge of any fraudulent purpose. However, even if that is true, it is not dispositive in the good faith inquiry. Id.

The relevant question in a good faith inquiry is "whether the transferee had actual knowledge of the debtor's fraudulent purpose" or, instead, "had knowledge of such facts or circumstances as would have induced an ordinarily prudent person to make inquiry, and which inquiry, if made with reasonable diligence, would have led to the discovery of the [transferor's] fraudulent purpose." Id. Plaintiff maintains that Mr. Hoffman and Freedman Office colluded in an effort to transfer Mr. Hoffman's assets to Freedman Office so he could become "judgment proof." Hyde Park was insolvent at the time of the transfer. Plaintiff asserts that Freedman Office knew or should have known of this fact, especially considering Mr. Hoffman and Freedman Office negotiated for four months with a business consultant present. The business consultant, Mr. Britton, had decades of banking experience. During Mr. Britton's deposition, he was asked if he had seen Hyde Park's 2009 tax return and answered that he did not recall. (Doc. 60, Transcr. Depo. Britton 14:15). Further, Mr. Freedman did not recall how he and Mr. Hoffman came to negotiate Mr. Hoffman's $120,000 override commission. (Doc. 60, Transcr. Depo. Freedman 30:21, 22).

Supplemental Defendant's general uncertainty regarding the transfer and its negotiations with Mr. Hoffman and Mr. Freedman's deposition testimony that the entire arrangement with Mr. Hoffman was unique in the sense that no other employee had a $120,000 override commission make the issue of good faith an ideal question for the finder of fact. The non-moving party provides evidence that creates a dispute of material fact concerning Freedman Office's alleged good faith. Therefore, summary judgment is not appropriate.  Accordingly, it is

**ORDERED** that Supplemental Defendant's Motion to Strike is **DENIED**. As discussed above, the Ray Caissie affidavit has been withdrawn and is not at issue in this order. (Doc. 63). Further, Supplemental Defendant's Motion for Summary Judgment is also **DENIED**.

**DONE** AND **ORDERED** in Chambers, in Tampa, Florida, this 28 th day of July, 2015.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All Parties and Counsel of Record